# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BILLINGS DIVISION

| | |
|---|---|
| **DANIEL SPEER,** <br><br> **Plaintiff,** <br><br> vs. <br><br> **UNITED BLOOD SERVICES, a division of Blood Systems, Inc.,** <br><br> **Defendant.** | Case No. CV-11-54-BLG-RFC <br><br><br> **ORDER** |

Plaintiff Daniel Speer was formerly employed in Billings as a Lab Training Coordinator by Defendant United Blood Services ("UBS"). UBS is a division of Blood Systems, Inc. ("BSI"). UBS terminated Plaintiff's employment as of December 31, 2009. Plaintiff alleges claims under Montana's Wrongful Discharge from Employment Act and Montana's Human Rights Act based on alleged violations of age and disability discrimination

Defendant UBS moves for Summary Judgment on all of Plaintiff's claims.

# FACTUAL BACKGROUND

Plaintiff began his employ with UBS in August 1988 as a Lab Technician. In the fall of 2008, Plaintiff was promoted to a temporary lab trainer to train new employees as lab technicians at its Billings location. On November 18, 2008, Plaintiff signed UBS' job description form for a Lab Training Coordinator. In light of this new position, Plaintiff received a raise as well as bonuses. In December 2009, Plaintiff received a letter from Executive Director of UBS Rocky Mountain Region William Henry informing him that his position had been eliminated due to a reduction in force (RIF). On December 31, 2009, Plaintiff's position was terminated. At the time Plaintiff's position was terminated, he was in his mid-fifties and had been with UBS for over twenty years.

Until 2009, Plaintiff had continually received better than average job evaluations and salary increases. On May 21, 2009, Plaintiff received a Letter of Formal Reprimand and Documentation of Written Warning from his supervisor Marni Wild. That letter informed Plaintiff of three instances where he failed to follow UBS Standard Operating Procedures in spite of a verbal warning.[1] UBS considered these instances to be a "major violation."

---

[1] *DEFENDANT'S STATEMENT OF UNDISPUTED FACTS (Doc. # 15), Exhibit E - Affidavit of Marni Wild,* ¶ 3.

Subsequent to the Letter of Reprimand, Plaintiff requested a FMLA leave of absence due a medical condition (anxiety, depression and stress). The leave started on May 28, 2009 and continued until July 30, 2009. For portions of the days between August 4 and August 29, 2009, Plaintiff took additional leave for the same reasons. During these periods, Plaintiff was still paid in accordance with UBS' short-term disability benefits plan.

Beginning in 2009, UBS designated its Billings, Montana location as a "Center Needing Improvement."[2] On September 18, 2009, Plaintiff was informed by UBS' Human Resources Director, Corinna Damm about UBS' corporate decision regarding reduction in force. The decision regarding which employee would be affected by the reduction in workforce was made by UBS' Executive Director William Henry.[3] In determining which positions to eliminate, Henry states that he did not utilize any employee's personal information, such as age, or disability.[4] Further, no lower managers or supervisors made RIF decisions.[5]

---

[2] *DEFENDANT'S STATEMENT OF UNDISPUTED FACTS (Doc. # 15), Exhibit A - Affidavit of William Henry, ¶ 3.*

[3] *Id. at ¶ 4.*

[4] *Id. at ¶ ¶ 4, 18.*

[5] *Id.*

The RIF criteria that Henry relied on in deciding which positions to eliminate were from BSI's policies and included: (1) unnecessary job titles; (2) unnecessary job duties; (3) inappropriate job titles such as supervisor titles without any direct reports; (4) job duties that could be reasonably assigned within a department; (5) job duties that could be reasonably assigned within the Rocky Mountain Region; and (6) new job titles needing to be added along with a detailed listing of job duties and time details to establish full time equivalents needed to meet the current operational business needs.[6]

Based on these criteria, one of the positions that Henry identified for reduction was Plaintiff's position as Lab Training Coordinator. Henry avers that this position was the only position of its kind in the entire UBS Rocky Mountain Region and he determined that it should not be a full time position.[7] Further, Henry felt that the workload and duties of a Lab Training Coordinator could be effectively performed by other staff and managers and that no additional positions would be needed to cover the workload.[8]

---

[6]*Id. at* ¶ 15.

[7]*Id. at* ¶ 16.

[8]*Id. at* ¶ 17.

Between September 2007 and December 2010, 34 UBS employees were terminated. Of those, the majority were under the age of 45 and only one employee had a disability.[9] At the time Plaintiff was terminated, there were no laboratory technician positions available.[10] However, during the summer of 2009 and while the Plaintiff was on Medical Leave, UBS did hire a new lab technician. In addition, in February 2010, after Plaintiff had been terminated, UBS advertised for a lab technician position at its Billings location.

## STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56.* The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any

---

[9]*Id. at ¶ 22.*

[10]*Id. at ¶ 21.*

significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979).

A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either: (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1000, 1102 (9th Cir. 2000). Once the moving party has satisfied its burden, the non-moving party must identify evidence establishing that a dispute as to a particular material fact is genuine. *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* And the opponent "may not rest upon the mere allegations or denials of his pleading, but must set forth facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "genuine" if there is sufficient evidence for a reasonable factfinder to find for the non-moving party. *Anderson*, 477 U.S. at 248–49. A fact is "material" if it may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment the court may not weigh the evidence or make

credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997), abrogated on other grounds as noted in *Shakur v. Schririo*, 514 F.3d 878, 884–85 (9th Cir. 2008).

**DISCUSSION**

UBS seeks summary judgment on Plaintiff's human rights and wrongful discharge claims.

*Human Rights Claims*

Plaintiff alleges that UBS discriminated against him because he was over fifty and had a disability. Under the Montana Human Rights Act, as codified in part at Mont. Code Ann. § 49-2-303, it is unlawful for an employer to discriminate against a person in compensation or in a term, condition, or privilege of employment because of age, physical or mental disability. *Id.*

In considering employment discrimination cases, courts are to first evaluate whether a plaintiff's complaint alleges a prima facie case of discrimination. If the plaintiff alleges a prima facie case, the employer must present a legitimate nondiscriminatory reason for its alleged action. *Heiat v. Eastern Montana College*, 912 P.2d 787, 793 (1996). Once the employer presents a legitimate non-

discriminatory reason, the plaintiff must produce evidence establishing his or her prima facie case, as well as evidence raising an inference that the employer's proffered reason is pretextual. *Id.*

Plaintiff's allegation is that UBS committed employment discrimination when it replaced him with a younger person and/or due to his mental health disability issues. In order to establish an employment discrimination claim based on age or a disability, a plaintiff must establish the following prima facie elements: (1) the claimant belonged to a protected class, (2) the claimant was otherwise qualified for continued employment, and (3) the claimant was denied employment under circumstances that raise a reasonable inference that he was treated differently because of this membership in the protected class. *Vortex Fishing Systems, Inc. v. Foss*, 38 P.3d 836, 839 (2001).

It is undisputed by the parties that the Plaintiff meets the first two prongs of a discrimination claim. Rather, both parties focus their arguments on the remaining prong. Plaintiff contends that, at the time he was terminated, other laboratory technicians who were younger than him, had no disability issues, and had less seniority were unaffected by the RIF and retained by UBS.

In response, UBS asks this Court to focus on the fact that at the time of Plaintiff's termination, his job classification was not that of a Laboratory

Technician but rather a Lab Training Coordinator. Consequently, UBS contends that the manner in which it implemented the Reduction in Force (RIF) policy with respect to laboratory technicians is irrelevant.

UBS changed Plaintiff's position, as of early 2009, to Lab Training Coordinator. This placed Plaintiff in a completely different job classification. As such, under UBS' RIF policy, UBS could eliminate employees from one classification without considering the seniority of employees in another classification.[11]

It is undisputed that the Lab Training Coordinator position is the only one of its kind within UBS' Rocky Mountain region. Further, it is undisputed that when the position was created, it was not advertised to the public or to other UBS employees to apply. In fact, UBS did not even require Plaintiff to apply for the job. Beginning in August 2008 and through February of 2009, in addition to his lab technician duties, Plaintiff began training new hires.[12] Regardless of the change in job classification, the majority of Plaintiff's job duties encompassed lab technician responsibilities. In addition, when he was offered and accepted the Lab

---

[11]*DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. # 14)*, Exhibit 3, Blood Systems, Inc.'s Reduction in Force (Layoff) Policy.

[12]*PLAINTIFF'S STATEMENT OF GENUINE ISSUES*, Exhibit 4, Affidavit of Daniel Speer, p. 2.

Training Coordinator position, he received a 10% increase in salary as well as monthly bonuses.[13] This placed Plaintiff at a salary level that was substantially higher than that of other lab technicians with less experience. Notably, after February 2009, UBS did not hire any new lab technicians for Plaintiff to train.[14]

Beginning in 2009, UBS determined that the Billings location was a "Center Needing Improvement." Based on this determination, UBS instituted the RIF that resulted in Plaintiff's termination at the end of 2009. Moreover, in August 2009, while Plaintiff was on medical leave, UBS hired another lab technician with less experience and at less pay than Plaintiff. The training of this new hire was completed by two other lab technicians that Plaintiff had previously trained.[15] Shortly after Plaintiff had been terminated, UBS advertised for a lab technician position at its Billings location.

These undisputed facts, when taken individually, appear innocuous. However, when taken together, they create genuine issues of material fact that raise a reasonable inference that Plaintiff was treated differently because of his age and disability.

---

[13]*Id., Exhibit 5, Affidavit of Corinna Damm*, ¶ 2.

[14]*Id., Exhibit 1, Deposition of Daniel Speer at 104.*

[15]*PLAINTIFF'S STATEMENT OF GENUINE ISSUES,* ¶ 8.

Once a plaintiff has established a prima facie case of discrimination, a defendant may establish that there was a legitimate, non-discriminatory business reason for its decision to terminate the plaintiff's position. *Reeves v. Dairy Queen,* 953 P.2d 703, 708 (1998). Once the defendant has articulated a legitimated, non-discriminatory business reason, plaintiff must raise an inference that the defendant's proffered reason is pretextual. *Heiat*, 912 P.2d at 793. For purposes of summary judgment, it is not necessary for plaintiff to demonstrate with specific fact that the employer's explanation is a pretext. *Id.*

In support of a legitimate business reason, UBS proffers the RIF decision made by UBS Executive Director William Henry. UBS notes that at the beginning of 2009, UBS' Billings location had been designated as a "Center Needing Improvement." As part of an effort to cure this issue, Henry implemented the RIF. In his RIF review, Plaintiff's position was one of the positions that was identified. In deciding to terminate Plaintiff's position, Henry avers that his analysis concluded that (1) Plaintiff's position was the only one of its kind in the Rocky Mountain Region; (2) Plaintiff's position could be effectively performed by existing staff and managers; and (3) the UBS Billings location was fully staffed

and no positions were needed to cover the workload.[16] At the time of the Plaintiff's termination, Henry had been the Executive Director for less than 3 months and had no personal knowledge of Plaintiff's disabilities.[17]

In support of his claim of pretext, Plaintiff allege that in the early fall of 2009, he met with his supervisor Corrinna Damm. She informed him that his position would be written off the books and that he could go back to his old lab technician position.[18] He was even told what his reduced pay would be. *Id.* In addition, Speer has alleged that in the fall of 2009, while he was performing his regular lab duties because there were no new hires needing to be trained, he would discover that there were in-service meetings relevant to his work that he was not informed of. *Id.* Further, Plaintiff makes reference to other employees who were of a similar age class as himself and were terminated after taking medical leave.[19] Moreover, as noted above, UBS advertised for a new lab technician within months after terminating Plaintiff.

---

[16]*DEFENDANT'S STATEMENT OF UNDISPUTED FACTS (Doc. # 15), Exhibit A - Affidavit of William Henry, ¶ 8.*

[17]*Id. at ¶ 10.*

[18]*PLAINTIFF'S STATEMENT OF GENUINE ISSUES (Doc. #21), AFFIDAVIT OF DANIEL SPEER, pp. 5-6.*

[19]*Id. at pp6-7; AFFIDAVIT OF VERNICE WATSON (Doc. #22) at p.3.*

Based on this, Plaintiff has sufficiently presented genuine issues of material fact that would raise the specter that UBS' business decision to terminate Plaintiff was pretextual. For the foregoing reasons, IT IS ORDERED that Defendant's Motion for Summary Judgment on Plaintiff's claims under Montana's Human Rights Act is DENIED.

### *Wrongful Discharge Claim*

In addition, Plaintiff has also brought a claim under the Montana Wrongful Discharge Act (WDEA), Mont. Code Ann. § 39-2-901, et. seq. Under the relevant portions of the Act, a discharge is considered wrongful if (1) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; and (2) the employer violated the express provisions of its own written personnel policy. Mont. Code Ann. § 39-2-904(1).

UBS has moved for summary judgment on two grounds: (1) it had a legitimate business reason for discharging Plaintiff; and (2) the Montana Human Rights Act is the exclusive vehicle by which a Plaintiff may bring an employment discrimination claim.

This Court concludes that Defendant UBS' exclusive remedy argument is without merit. In *Tonack v. Montana Bank of Billings,* 854 P.2d 326, 331 (1993)*,* the plaintiff brought an employment discrimination claim as well as a wrongful

discharge claim. The plaintiff prevailed on both claims. The Montana Court reversed, concluding that a favorable determination on the discrimination claim precluded recovery under the wrongful discharge claim. *Id.* Further, where an affirmative determination has not been made under the employment discrimination claim and the allegations that make up the wrongful discharge claim are distinct, a plaintiff may pursue a wrongful discharge claim with his employment discrimination claim. *Vettel-Becker v. Deaconess Medical Center of Billings, Inc.*, 177 P.3d 1034, 1041 (Mont. 2008).

Plaintiff alleges that he was not a probationary employee and had been with UBS for over twenty years with an excellent work history.[20] He further alleges that in May 2009, in order to place a bad mark on his record, he was unfairly disciplined and his resulting termination was without good cause.[21] Plaintiff further alleges that in terminating him, UBS violated its own RIF policy.[22]

Because there has been no affirmative determination on Plaintiff's employment discrimination and the allegations that Plaintiff relies on in support of his wrongful discharge claim are distinct from his employment discrimination

---

[20] *Complaint (Doc. # 4) at ¶ 9.*

[21] *Id. at ¶ 10-11.*

[22] *Id. at ¶ 12.*

claim, the MHRA does not preclude Plaintiff from also pursuing a wrongful discharge claim.

In the alternative, UBS contends that Plaintiff has failed to raise a genuine issue of fact that UBS' reason for terminating him was legitimate and non-discriminatory.

Wrongful discharge can be proven in several ways, one of which is by demonstrating that the employer lacked good cause for the discharge. "Good cause for discharge" is defined as reasonable job-related grounds for dismissal based on (1) a failure to satisfactorily perform job duties; (2) disruption of the employer's operation; or (3) other legitimate business reason.  Mont. Code Ann. § 39–2–903(5).  A "legitimate business reason" is defined as "a reason that is neither false, whimsical, arbitrary or capricious," and logically related to the needs of the business.  *Buck v. Billings Montana Chevrolet, Inc.*, 811 P.2d 537, 540 (1991). A court must balance the right of an employer to exercise discretion over who it will employ and keep in employment against the legitimate interests of the employee to secure employment. *Id*. "The balance should favor an employee who presents evidence, and not mere speculation or denial, upon which a jury could determine that the reasons given for his termination were false, arbitrary or capricious, and unrelated to the needs of the business." *Johnson v. Costco Wholesale*, 152 P.3d

727, 733 (Mont. 2007), quoting *Kestell v. Heritage Health Care Corp.*, 858 P.2d 3, 8 (Mont. 1993).

UBS argues that the legitimate business reasons for Plaintiff's termination are the facts that the UBS Billings location had been designated as a "Center Needing Improvement" and the RIF.

In order for an employee to create an issue of fact on the issue of good cause in regards to a pretext, the employee must "prove that the given reason for the discharge ... is a pretext and not the honest reason for the discharge." *Arnold v. Yellowstone Mountain Club, LLC*, 100 P.3d 137, 142 (Mont. 2004).

As reflected above, in the over 20 years that Plaintiff had been employed, he had only been written up once and that was in May 2009. Further, UBS hired an additional lab technician while Plaintiff was on medical leave in August 2009, instead of returning Plaintiff to his original lab technician position. Prior to terminating Plaintiff, UBS designated him as a Lab Training Coordinator, but did not have any employees for Plaintiff to train. This Lab Training Coordinator position was not advertised as required by UBS company policy. Shortly after Plaintiff had just been terminated, UBS advertised for a new lab technician, the same position that Plaintiff had previously occupied.[23]

---

[23] *PLAINTIFF'S STATEMENT OF GENUINE ISSUES, Exhibit 3.*

In addition, Plaintiff contends that UBS violated its own RIF policy. That policy provides a hierarchy for layoff selection. Specifically, it directs in descending order: (1) the layoff of employees who have not completed their 90-day orientation; (2) the layoff of employees with a history of performance or conduct problems; and (3) the layoff of employees based on their overall demonstrated performance.[24] Plaintiff contends that there are genuine issues as to whether UBS followed its own RIF policy when making the determination to lay him off.

UBS again argues that Plaintiff's classification as a Lab Training Coordinator is distinct from that of a lab technician regardless of whether those job duties overlapped. However, it appears that when not performing his training duties, Plaintiff was performing lab technician duties. Because UBS placed him in the Lab Training Coordinator classification without opening the position to other applicants, there are genuine issues of material fact as to whether Plaintiff's classification as a Lab Training Coordinator was pretextual in order to later terminate him. For purposes of Plaintiff's wrongful discharge claim, this Court

---

[24]*DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. # 14)*, Exhibit 3, Blood Systems, Inc.'s Reduction in Force (Layoff) Policy.

finds that Plaintiff has raised genuine issue of material fact regarding the legitimacy of the proffered reasons for his termination.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant UBS' Motion for Summary Judgment (*Doc. # 13*) is DENIED. The Clerk of Court shall notify the Parties of the making of this Order.

DATED this 21st day of December, 2012.

                                 */s/ Richard F. Cebull*
                                 RICHARD F. CEBULL
                                 U. S. DISTRICT COURT JUDGE